UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO: _____

_____

KENDALL NORMAN,

       Plaintiff,

v.

3M COMPANY,

       Defendant.

_____

## **COMPLAINT**

Plaintiff, KENDALL NORMAN ("Plaintiff"), hereby sues Defendant, 3M COMPANY; ("Defendant," "3M," or "3M/Aearo") for personal injuries resulting from Defendant's defective and unreasonably dangerous product, the Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-ended Combat Arms™ earplugs"). At all times relevant hereto, the Dual-ended Combat Arms™ earplugs were manufactured, designed, formulated, tested, packaged, labeled, marketed, distributed, and sold by Defendant.

## INTRODUCTION

1.      Plaintiff Kendall Norman, a United States Air Force ("U.S. Air Force") veteran, brings this suit to recover damages arising from personal injuries sustained while in training and/or on active military duty.  Plaintiff used Defendant's Dual-ended Combat Arms™ earplugs during training and combat exercises.  As known, but fraudulently concealed by Defendant, its Dual-ended Combat Arms™ earplugs were defective and created a significant risk of hearing loss, tinnitus, and other hearing related injuries to all servicemembers who used these earplugs during training or combat exercises.

2.      Despite knowing of the dangerous defects in its earplugs, Defendant sold the Dual-ended Combat Arms™ earplugs to the Department of Defense ("DoD") for more than a decade without providing the military and/or Plaintiff with any warning of said defects, causing Plaintiff and other similarly situated servicemembers permanent injuries.  In fact, Defendant's Dual-ended Combat Arms™ earplugs were standard issue in certain branches of the U.S. military between at least 2003 to at least 2015, meaning Defendant's willful and fraudulent actions have likely caused thousands, if not millions, of U.S. servicemembers to suffer from significant and permanent injuries, pain, suffering, and the loss of the pleasures of life.

## PARTIES

3.      Plaintiff served in the U.S. Air Force from 1996 to 2015, during which time Plaintiff was stationed at Lackland Air Force Base in San Antonio, Texas and McGuire Air Force Base in New Jersey.  Plaintiff was deployed to Japan from 2002

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

to 2003, Germany from 2003 to 2004, and Iraq from 2004 to 2006. The U.S. Air Force provided Plaintiff with Dual-ended Combat Arms™ earplugs for use during training and combat exercises domestically and abroad. Plaintiff suffers from tinnitus as a result of the Dual-ended Combat Arms™ earplugs. Plaintiff is a citizen and resident of Osceola County, Florida.

4.    Defendant, 3M COMPANY, is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota. Defendant is one of the largest companies in the United States, and among other things, is in the business of, and has a dominant market share in, designing, manufacturing, and selling safety products, including hearing protectors.

### JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Plaintiff and Defendant are citizens of different states.

6.    This Court has personal jurisdiction over Defendant pursuant to Florida Statutes §§ 48.193(1)(a)(1) and (6) because it has purposefully availed itself of the privilege of conducting business in the State of Florida; some of the actions giving rise to the Complaint took place in this District; including causing personal injury in this state arising out of Defendant's acts and omissions outside this state; and at or about the time of such injuries, Defendant was engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

manufactured by Defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

7.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the Defendant, a corporation, resides in this District in that its contacts in the District would be sufficient to subject it to personal jurisdiction if the District were a separate state, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### GENERAL ALLEGATIONS

8.     Based on information and belief, and in part upon the pleadings and allegations as contained in *United States ex rel. Moldex-Metric, Inc. v. 3M Company*, Case No. 3:16-cv- 01533-DCC (D.S.C. 2016), Plaintiff states as follows:

9.     On July 26, 2018, Defendant agreed to pay $9.1 million to resolve allegations that it knowingly sold the Dual-ended Combat Arms™ earplugs to the DoD without disclosing defects known by Defendant that hampered the effectiveness of the hearing protection devices. *See* United States Department of Justice, *3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs* (Jul. 26, 2018), available at https://www.justice.gov/opa/pr/3m- company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual (last visited February 7, 2019).

10.    Defendant's Dual-ended Combat Arms™ earplugs are non-linear, or selective attenuation, earplugs which were designed to provide soldiers with two

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

different options for hearing attenuation depending upon how the plugs are worn. Both sides of the dual-sided earplugs were purported to provide adequate protection for soldier's ears when worn. *See*:



11.    If worn in the "closed" or "blocked" position (olive end in), the earplugs are intended to act as a traditional earplug and block as much sound as possible.

12.    If worn in the "open" or "unblocked" position (yellow side in user's ear), the earplugs are intended to reduce load impulse sounds, such as battlefield explosions and artillery fire, while allowing the user to hear quieter noises; for example, commands spoken by fellow soldiers and approaching enemy combatants.

13.    Defendant's standard fitting instructions state the wearer is to grasp the earplug by the stem and insert it into the ear canal.

14.    The design of the earplug prevents a snug fit in the ear canal of the wearer, an inherent defect about which there was no adequate warning.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

15.    When inserted according to Defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearers' ear canal and folds back to its original shape, thereby loosening the seal in the wearers' ear canals and providing insufficient protection.

16.    Because the earplugs are symmetrical, the standard fitting instructions will result in a loosening of the seal when either side is inserted into the ear canal.

17.    These earplugs were originally created by a company called Aearo Technologies ("Aearo" or "3M/Aearo").

18.    Defendant 3M acquired Aearo in 2008, including Aearo's liabilities, (and thus 3M is liable for Aearo's conduct as alleged herein).

19.    Earplugs like the Dual-ended Combat Arms™ earplugs are sold with a stated Noise Reduction Rating ("NRR") [1] that should accurately reflect the effectiveness of hearing protection.

20.    The military likely purchased, at a minimum, one pair of 3M's Dual-ended Combat Arms™ earplugs for each deployed soldier annually involved in certain foreign engagements between at least 2003 and at least 2015. *See* McIlwain, D. Scott *et al., Heritage of Air force Audiology and the Road Ahead: The Air force Hearing Program*, AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec. 2008).

---

[1] Noise Reduction Rating ("NRR") is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment. Classified by their potential to reduce noise in decibels (dB), a term used to categorize the power or density of sound, hearing protectors must be tested and approved by the American National Standards ("ANSI") in accordance with the Occupational Safety and Health Administration ("OSHA"). The higher the NRR number associated with a hearing protector, the greater the potential for noise reduction.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

21.    3M/Aearo's Dual-ended Combat Arms™ earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by 3M to the military until at least late 2015, wherein Defendant discontinued the earplugs.

22.    The defective earplugs have not been recalled and therefore could very well be in continued use by soldiers and others.

### History of Testing – January 2000

23.    Employees from 3m/Aearo began testing the Dual-ended Combat Arms™ earplugs in approximately January of 2000.

24.    3M/Aearo chose to conduct the testing at its own laboratory rather than an outside, independent laboratory.

25.    3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test the Dual-ended Combat Arms™ earplugs.

26.    3M/Aearo's employees intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow) end of the Dual-ended Combat Arms™ earplug inserted; and (3) the subject's hearing with the closed/blocked (olive) end of the Dual-ended Combat Arms™ earplug inserted. This testing was designed to provide data regarding the "NRR" of the Dual-ended Combat Arms™ earplugs.

27.    3M/Aearo personnel monitored the results of each subject as the test was performed and could thus stop the test if the desired NRR results were not

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

achieved.

28.    Eight of the ten subjects were tested using both the open and closed end of the Dual-ended Combat Arms™ earplugs.

29.    Testing of the eight subjects suggested an average NRR of 10.9, which was far below the adequate NRR that 3M/Aearo personnel would and should have expected for the closed end.

30.    As a result, 3M/Aearo prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms™ earplugs.

31.    3M/Aearo personnel determined that when the closed, olive end of the earplug was inserted into the wearer's ear according to the standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards. When the inward pressure of the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptible to the wearer.

32.    The symmetrical nature of the earplug prevents a snug fit when worn either "open" or "closed" according to the standard fitting instructions.

33.    3M/Aearo personnel determined that a snug fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

34.    3M/Aearo personnel decided not to test the closed end of the Dual-ended Combat Arms™ earplugs for two of the ten subjects because the results were well below the intended and desired NRR.

35.    3M/Aearo completed testing of all ten subjects with the open end of the

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

Dual- ended Combat Arms™ earplugs to obtain a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound.

36.     3M/Aearo represented the -2 NRR as a "0" NRR which 3M/Aearo has displayed on its packaging since its launch.

37.     3M/Aearo falsely touts the "0" NRR as a benefit of the Dual-ended Combat Arms™ earplugs, by suggesting that soldiers will be able to hear their fellow soldiers and enemy combatants while still providing some protection. As stated however, the true -2 NRR of the "open" end actually amplifies sound thereby exposing the wearer to harm.

## History of Testing – February 2000

38.     Upon identifying the fit issue, 3M/Aearo re-tested the olive, closed end of the Dual-ended Combat Arms™ earplugs in February of 2000 using different fitting instructions.

39.     When testing the closed end, 3M/Aearo personnel folded back the yellow flanges on the open end of the Dual-ended Combat Arms™ earplugs prior to insertion.

40.     Using this "modified" fitting procedure, 3M/Aearo achieved a 22 NRR on the closed end of the Dual-ended Combat Arms™ earplugs.

41.     3M, however, never properly warned service members that the only potential way to achieve this purported NRR was to modify the Dual-ended Combat Arms™ earplugs by folding the yellow flanges on the opposite end.

42.     The yellow, open end of the Dual-ended Combat Arms™ earplugs was not retested using the "modified" fitting procedure.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## Defendant's Representations and Omissions

43.     Since 2003, 3M/Aearo has been awarded multiple Indefinite-Quantity Contracts ("IQC") from the U.S. military in response to Requests for Proposals ("RFP").

44.     From 2003-2012, 3M/Aearo was the exclusive supplier of these type of earplugs to the U.S. military.

45.     3M/Aearo was aware of the design defects alleged herein as early as 2000.

46.     Accordingly, the defects of the Dual-ended Combat Arms™ earplugs were known to Defendant well before it became the exclusive provider of the earplugs to the U.S. military.

47.     3M/Aearo knew at the time it bid for the initial IQC that the Dual-ended Combat Arms™ earplugs had dangerous design defects as they would not adequately protect the users from loud sounds and did not adequately warn of the defects or adequately warn how to wear the earplugs.

48.     3M/Aearo responded to the military's RFP with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4204.

49.     3M/Aearo knew at the time it made the certifications that the earplugs did not comply with the MPID.

50.     3M/Aearo knew that the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to the wearer and even trained audiologists

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believed that the earplug was working as intended.

51.     The pertinent Salient Characteristics set forth in the MPID, which were uniform across all RFPs, in relevant part, are as follows:

> 2.1.1 Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quitter sounds, such as voice commands, on the battlefield.
>
> 2.2.2 The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19.
>
> 2.4 <u>Workmanship</u>. **The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.**
>
> 2.5. <u>Instructions</u>. **Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit.**
>
> Solicitation No. SP0200-06-R-4202 at 41-42. (Emphasis added).

52.     The Environmental Protection Agency ("EPA") has also promulgated regulations pursuant to the Noise Control Act, 42 U.S.C. § 4901, *et seq.*, that govern the testing and attendant labeling of hearing protective devices like the Dual-ended Combat Arms™ earplugs. Specifically, 40 C.F.R. § 211.206-1 provides that:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974.

53.     Additionally, 40 C.F.R. § 211.204-4(e), of the EPA regulations requires certain "supporting information" must accompany hearing protection devices sold in the United States:

The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user.  In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location…**Instructions as to the proper insertion or placement of the device**.

(Emphasis added).

54.    3M/Aearo knowingly used the deliberately flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms™ earplugs to the military with the representation that they possess a "22" NRR in the closed position.

55.    Defendant includes standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the EPA, Noise Control Act, and the MPID.

56.    Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms™ earplugs do not instruct wearers to fold back the flanges of the opposite end before inserting the plug into the ear.

57.    Instead, Defendant improperly instructs wearers to simply insert the earplugs into the ear canal.

58.    By failing to instruct wearers of the Dual-ended Combat Arms™ earplugs to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into their ears (which is necessary to achieve the "22" NRR), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

59.    3M's/Aearo's packaging and marketing of such earplugs with a labeled NRR of "22" thereby misleads the wearer and has likely caused thousands of soldiers

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M/Aearo's defective earplugs.

60.     Despite knowing that its flawed testing involved steps to manipulate the fit of the earplug, 3M's/Aearo's standard instructions for use of the earplugs do not instruct, and never have instructed, the wearer to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ears (which is necessary to achieve the 22 NRR and avoid the defect associated with the short stem).

61.     3M/Aearo's instructions instead have provided standard fitting instructions for inserting the earplug on both ends which are facially inadequate.

62.     3M/Aearo was aware prior to selling the earplugs to the military, that testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs it wanted on both ends of the Dual-ended Combat Arms™ earplugs, and Defendant continued to use these inaccurate NRRs to market the earplugs to the military for more than ten years without disclosing the design defect.

### PLAINTIFF'S ALLEGATIONS

63.     Plaintiff served in the U.S. Air Force from 1996 to 2015, during which time Plaintiff was stationed at Lackland Air Force Base in San Antonio, Texas and McGuire Air Force Base in New Jersey. Plaintiff was deployed to Japan from 2002 to 2003, Germany from 2003 to 2004, and Iraq from 2004 to 2006. The U.S. Air Force provided Plaintiff with Dual-ended Combat Arms™ earplugs for use during training and combat exercises domestically and abroad. Plaintiff suffers from tinnitus as a result of the Dual-ended Combat Arms™ earplugs. Plaintiff was never instructed to

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

fold back the flanges on the opposite side of use of the earplug.    Prior to Plaintiff's

military service, Plaintiff had no signs or symptoms of tinnitus.

CAUSES OF ACTION

Count I – Negligence (Design Defect)

64.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set

forth herein.

65.    At all times relevant to this action, Defendant had a duty to

manufacture, design, formulate, test, package, label, produce, create, make,

construct, assemble, market, advertise, promote, distribute, and sell the Dual-ended

Combat Arms™ earplugs with reasonable and due care for the safety and well-being

of all those using the earplugs, including but not limited to Plaintiff and all other U.S.

military servicemembers who used Defendant's Dual-ended Combat Arms™ earplugs

in connection with military service.

66.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms™

earplugs in that Defendant knew that the Dual-ended Combat Arms™ earplugs

would be used by U.S. military servicemembers, including Plaintiff.

67.    The Dual-ended Combat Arms™ earplugs are defective in that the

design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the

wearer, thereby permitting dangerous sounds to enter the ear canal by traveling

around the outside of the earplug while the user incorrectly believes that the earplug

is working as intended.

68.    When the Dual-ended Combat Arms™ earplugs are inserted into the ear

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

according to standard fitting instructions, a proper seal is not formed with the ear canal.

69.    The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug may not maintain a tight seal in some wearer's ear canals such that dangerous sounds can bypass the plug altogether thereby posing serious risk to the wearer's hearing unbeknownst to him or her.

70.    Upon information and belief, Defendant failed to exercise reasonable and due care under the circumstances and therefore breached its duties in the following ways:

    a. Failing to design the Dual-ended Combat Arms™ earplugs in a manner which would result in an NRR of 22 when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant;

    b. Failing to properly and thoroughly test the Dual-ended Combat Arms™ earplugs;

    c. Failing to properly and thoroughly analyze the data resulting from testing of the Dual-ended Combat Arms™ earplugs;

    d. Designing, manufacturing, distributing and selling the Dual-ended Combat Arms™ earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

    e. Designing, manufacturing, distributing and selling the Dual-ended Combat Arms™ earplugs without providing proper instructions to avoid the harm which could foreseeably occur because of using the earplugs in the manner the Defendant's standard fitting instructions directed;

    f. Failing to fulfil the standard of care required of a reasonable and prudent manufacturer of hearing protection devices, specifically including products such as the Dual-ended Combat Arms™ earplugs which were intended for military use; and,

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

g. Negligently continuing to manufacture and distribute the Dual-ended Combat Arms™ earplugs to the U.S. military after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

71.    Defendant knew or should have known that the defective condition of the Dual-ended Combat Arms™ earplugs made it unreasonably dangerous to the U.S. military servicemembers who used the earplugs.

72.    The Dual-ended Combat Arms™ earplugs were dangerous when used by ordinary U.S. military servicemembers who used it with the knowledge common to the U.S. military as to the product's characteristics and common usage.

73.    Defendant knew or should have known of the defective designed at the time that the Dual-ended Combat Arms™ earplugs were used by Plaintiff.

74.    At the time the Dual-ended Combat Arms™ earplugs were used by Plaintiff and left the possession of Defendant, the earplugs were in a condition which made them unreasonably dangerous to the ordinary U.S. military servicemember.

75.    At all relevant times, Plaintiff used the Dual-ended Combat Arms™ earplugs in the manner in which they were intended, as provided for by Defendant's instructions.

76.    As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers, of the Dual-ended Combat Arms™ earplugs, Defendant owed a duty of care to Plaintiff.

77.    At all times, it was foreseeable to Defendant that its actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to Plaintiff.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

78.    The Dual-ended Combat Arms™ earplugs were the proximate cause of Plaintiff's personal injuries.  Defendant's conduct was a substantial factor in bringing about the injuries sustained by Plaintiff because Defendant designed, manufactured, tested, sold, and distributed the Dual-ended Combat Arms™ earplugs to the U.S. military.

79.    As a direct and proximate result of Defendant's negligence in designing the defective Dual-ended Combat Arms™ earplugs, Plaintiff sustained severe and permanent physical injury, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

## Count II – Strict Liability (Design Defect)

80.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set forth herein.

81.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms™ earplugs.

82.    The Dual-ended Combat Arms™ earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting dangerous sounds to enter the ear canal by travelling around the outside of the earplug while the user incorrectly believes that the earplug

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

is working as intended.

83.     Defendant knew that the defective condition of the Dual-ended Combat Arms™ earplugs made it unreasonably dangerous to all those using them, including but not limited to U.S. military servicemembers such as Plaintiff.

84.     The Dual-ended Combat Arms™ earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased the devise because the design of the Dual-ended Combat Arms™ earplugs allows for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to the wearer's hearing unbeknownst to him or her.

85.     Defendant knew of the defective design at the time the Dual-ended Combat Arms™ earplugs were provided to Plaintiff.

86.     At the time the Dual-ended Combat Arms™ earplugs left Defendant's possession, the earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary U.S. military servicemember who used them.

87.     At all relevant times, Plaintiff used the Dual-ended Combat Arms™ earplugs in the manner in which they were intended and as provided for by Defendant's instructions.

88.     The Dual-ended Combat Arms™ earplugs were the proximate cause of Plaintiff's injuries and damages because the short-stem design of the earplugs allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

89.     Defendant's conduct was a substantial factor in bringing about

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

Plaintiff's injuries and damages because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms™ earplugs that caused Plaintiff's tinnitus.

90.    As a direct and proximate result of the Defendant's design defect, Plaintiff was caused to sustain severe and permanent physical injury, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other damages for which relief is sought.

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

## Count III – Negligence (Failure to Warn)

91.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set forth herein.

92.    At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, distribute, and sell the Dual-ended Combat Arms™ earplugs with reasonable and due care for the safety and well-being of U.S. military servicemembers, including Plaintiff, who were provided with and used the earplugs during their service with the U.S. military.

93.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms™ earplugs.

94.    The Dual-ended Combat Arms™ earplugs are defective, in part, in that

the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting dangerous sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

95.    The Dual-ended Combat Arms™ earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Dual-ended Combat Arms™ earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

96.    The warnings and instructions that accompanies the Dual-ended Combat Arms™ earplugs failed to provide that level of information than an ordinary consumer would expect when using the Dual-ended Combat Arms™ earplugs in a manner reasonably foreseeable to Defendant.

97.    Had Plaintiff received a proper or adequate warning as to the risks associated with the Dual-ended Combat Arms™ earplugs, Plaintiff would not have used the Dual-ended Combat Arms™ earplugs.

98.    The Dual-ended Combat Arms™ earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because design of the earplugs allows for dangerous sounds to bypass the plug altogether thus positing a serious risk to Plaintiff's hearing unbeknownst to Plaintiff.

99.    As a direct and proximate result of Defendant's failure to warn, Plaintiff was caused to sustain severe and permanent physical injury, monetary damages,

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

### Count IV – Breach of Express Warranty

100.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set forth herein.

101.    Through Defendant's public statements, descriptions of the Dual-ended Combat Arms™ earplugs, and promises relating to the Dual-ended Combat Arms™ earplugs, Defendant expressly warranted, among other things, that the Dual-ended Combat Arms™ earplugs were safe and effective for their intended use, and were designed and constructed to prevent harmful sounds from bypassing the earplugs in order to protect the user's hearing.

102.    These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-ended Combat Arms™ earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-ended Combat Arms™ earplugs); (iii) verbal assurances made by Defendant's consumer relations personnel about the safety of the Dual-ended Combat Arms™ earplugs which also downplayed the risks associated with the Dual-ended Combat Arms™ earplugs; and

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

(iv) false and misleading written information and packaging supplied by Defendant.

103.    When Defendant made these express warranties, it knew the purpose(s) for which the Dual-ended Combat Arms™ earplugs were to be used and warranted them to be in all respects safe and proper for all such purposes.

104.    Defendant drafted the documents and/or made the statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

105.    The Dual-ended Combat Arms™ earplugs do not conform to Defendant's promises, descriptions, or affirmation of fact, and was not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

106.    Plaintiff further alleges that all of the aforementioned written materials are known to Defendant and in its possession, and it is Plaintiff's reasonable belief that these materials shall be produced by Defendant and be made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

107.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff was caused to sustain severe and permanent physical injuries, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## Count V – Breach of Implied Warranty

108.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set forth herein.

109.    At the time that Defendant marketed, sold, and distributed the Dual-ended Combat Arms™ earplugs, Defendant knew of the use for which the earplugs were intended and impliedly warranted that the Dual-ended Combat Arms™ earplugs were of merchantable quality and effective for such use.

110.    Defendant knew, or had reason to know, that Plaintiff would rely on Defendant's judgment and skill in providing the Dual-ended Combat Arms™ earplugs for their intended use.

111.    Plaintiff reasonably relied on the skill and judgment of Defendant as to whether the Dual-ended Combat Arms™ earplugs were of merchantable quality, safe, and effective for their intended use.

112.    Contrary to such implied warranties, the Dual-ended Combat Arms™ earplugs were not of merchantable quality, nor were they safe and effective for their intended use, because the Dual-ended Combat Arms™ earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Dual-ended Combat Arms™ earplugs were used.

113.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff was caused to sustain severe and permanent physical injuries, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

### Count VI – Fraudulent Misrepresentation

114.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set forth herein.

115.    Defendant falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-ended Combat Arms™ earplugs had been properly tested and were free from all defects.

116.    Defendant intentionally manipulated testing of the Dual-ended Combat Arms™ earplugs, resulting in false and misleading NRRs and improper fitting instructions.

117.    The representations made by Defendant were, in fact, false.

118.    When said representations were made by Defendant, it knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

119.    These representations were made by Defendant with the intent of defrauding and deceiving Plaintiff, and the public in general, and were made with the intent of inducing Plaintiff and the public in general, to recommend, purchase, and/or use the Dual-ended Combat Arms™ earplugs, all of which evidenced a callous, reckless, willful, and depraved indifference to the health, safety and welfare of Plaintiff.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

120.    At the time the above detailed representations were made by Defendant, and at the time that Plaintiff used the Dual-ended Combat Arms™ earplugs, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

121.    In reliance upon said representation, Plaintiff was induced to and did use Dual-ended Combat Arms™ earplugs, thereby sustaining severe and permanent personal injuries.

122.    At all times, Defendant knew and was aware or should have been aware that the Dual-ended Combat Arms™ earplugs had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient instructions.

123.    Defendant knew or should have known that the Dual-ended Combat Arms™ earplugs had a potential to, could, and would cause severe and permanent injuries to the users of the earplugs.

124.    Defendant brought the Dual-ended Combat Arms™ earplugs to market, and acted fraudulently, wantonly and maliciously to the detriment of Plaintiff and all other U.S. military servicemembers who are similarly situated.

125.    As a result of the foregoing acts and omissions, Plaintiff was caused to sustain severe and permanent physical injuries, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit,

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

attorney's fees, and such further relief as the Court deems equitable and just.

## Count VII – Fraudulent Concealment

126.  Plaintiff incorporates by refence paragraphs 1-63 as though fully set forth herein.

127.  At all material times, Defendant misrepresented the safety and efficacy of the Dual-ended Combat Arms™ earplugs for their intended use.

128.  Defendants knew or were reckless in not knowing that their representations were false.

129.  In representations to Plaintiff, and the general public at large, Defendant fraudulently concealed and intentionally omitted the following material information:

    a. That the testing of the Dual-ended Combat Arms™ earplugs was intentionally flawed and biased;

    b. The amount of hearing protection provided by the Dual-ended Combat Arms™ earplugs;

    c. The proper instructions for utilizing the Dual-ended Combat Arms™ earplugs;

    d. That the Dual-ended Combat Arms™ earplugs were defective and unsafe in their design for their intended and advertised use;

    e. That the Dual-ended Combat Arms™ earplugs were manufactured in a defective nature and as a result were unsafe for their intended and advertised use; and,

    f. That Defendant was aware of the defects in the Dual-ended Combat Arms™ earplugs.

130.  At all times, Defendant had a duty to Plaintiff to disclose the known defective nature of the Dual-ended Combat Arms™ earplugs.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

131.    Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Dual-ended Combat Arms™ earplugs, including but not limited to Plaintiff.

132.    Defendant's concealment and omissions of material facts concerning, *inter alia*, the safety and efficacy of the Dual-ended Combat Arms™ earplugs were made purposefully, willfully, and/or wantonly, to mislead Plaintiff into reliance, and continued use of the Dual-ended Combat Arms™ earplugs, and actions thereon, and to cause Plaintiff to purchase and/or use the product. At all times, Defendant knew that Plaintiff had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of fact surrounding the Dual-ended Combat Arms™ earplugs, as set forth herein.

133.    Plaintiff reasonably relied on facts revealed which negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

134.    By reason of the foregoing, Plaintiff was caused to sustain severe and permanent physical injuries, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## Count VIII – Negligent Misrepresentation

135.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set forth herein.

136.    Defendant had a duty to represent to Plaintiff, and the public in general, that the Dual-ended Combat Arms™ earplugs had been properly tested and found to be effective.

137.    Defendant was aware that its testing procedures and fitting instructions were unlawfully manipulated.

138.    The representations made by Defendant were, in fact, false.

139.    Defendant failed to exercise ordinary care in the representation of the Dual-ended Combat Arms™ earplugs, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant negligently misrepresented the Dual-ended Combat Arms™ earplugs' safety and efficacy.

140.    Defendant breached its duty in representing the Dual-ended Combat Arms™ earplugs serious defects to Plaintiff.

141.    As a result of the foregoing acts and omissions, Plaintiff was caused to sustain severe and permanent physical injuries, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

WHEREFORE, Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit,

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

attorney's fees, and such further relief as the Court deems equitable and just.

## Count IX – Fraud and Deceit

142.    Plaintiff incorporates by reference paragraphs 1-63 as though fully set forth herein.

143.    Defendant conducted unlawful and improper testing on the Dual-ended Combat Arms™ earplugs.

144.    As a result of Defendant's unlawful and improper testing, Defendant blatantly and intentionally distributed false information which overstated the among of hearing protection provided by the Dual-ended Combat Arms™ earplugs.

145.    As a result of Defendant's unlawful and improper testing, Defendant intentionally omitted and misrepresented certain test results to Plaintiff.

146.    Defendant had a duty when disseminating information to the public to disseminate truthful information, including a parallel duty not to deceive the public and Plaintiff.

147.    The information distributed by Defendant to Plaintiff contained material misrepresentations of fact and/or omissions concerning the hearing protection provided by the Dual-ended Combat Arms™ earplugs.

148.    These representations were false and misleading.

149.    Upon information and belief, Defendant intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-ended Combat Arms™ earplugs.

150.    Defendant purposely made these misrepresentations to deceive and

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

defraud the public in general, including Plaintiff, to gain the confidence of the public in general, including Plaintiff, and to induce the public in general, including Plaintiff, to purchase, request, dispense, recommend, and/or use the Dual-ended Combat Arms™ earplugs.

151.  Defendant made the aforementioned false claims and false representations with the intent of convincing the public in general, and Plaintiff, that the Dual-ended Combat Arms™ earplugs were fit and safe for use.

152.  The representations made by Defendant were false when made, and/or were made with a pretense of actual knowledge when such actual knowledge did not exist, and/or were made recklessly without regard to the actual facts.

153.  The representations made by Defendant were made with the intention of deceiving and defrauding Plaintiff and all other similarly situated, and were made to induce Plaintiff to rely upon misrepresentations and caused Plaintiff to purchase, use, rely on, request, dispense, and/or recommend the Dual-ended Combat Arms™ earplugs.

154.  Defendant recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms™ earplugs to the public at large, and to Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous, defective, and/or not as safe as other reasonable alternatives.

155.  Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms™

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms™ earplugs.

156.  Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving Plaintiff, and other similarly situated, into a sense of security so that Plaintiff would rely on such representations in purchasing and/or using the Dual-ended Combat Arms™ earplugs.

157.  Plaintiff did in fact rely on and believe Defendant's representations to be true at the time they were made and relied upon the representations and was thereby induced to use and rely on the Dual-ended Combat Arms™ earplugs.

158.  At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms™ earplugs.

159.  Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff have discovered the true facts.

160.  Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms™ earplugs, Plaintiff would not have used and/or relied upon them.

161.  Defendant's aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiff and all others similarly situated.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

162.   As a result of the foregoing acts and omissions, Plaintiff was caused to sustain severe and permanent physical injuries, monetary damages, pain, suffering, mental and emotional anguish, loss of capacity to enjoy life, and other compensable damages for which relief is sought.

WHEREFORE Plaintiff demands judgment against Defendant and request compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

## Punitive Damages

163.   Plaintiff incorporates by reference all the proceeding paragraphs as if fully set forth herein.

164.   Defendant has acted willfully, wantonly, and recklessly in one or more of the following ways:

a.   By failing to disclose material facts regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms™ earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms™ earplugs;

b.   By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiff, and others similarly situated, so that Plaintiff would use and rely upon the Dual-ended Combat Arms™ earplugs; and,

c.   By falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms™ earplugs to the public at large, and Plaintiff in particular.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages and punitive damages, together with interest, cost of suit, attorney's fees, and such further relief as the Court deems equitable and just.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## TIMELINESS & TOLLING OF STATUTE OF LIMITATIONS

165.    Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that Defendant's Dual-ended Combat Arms™ earplugs caused their injuries. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms™ earplugs-induced injuries at an earlier time, because, at the time Plaintiff sustained his injuries, the cause was unknown to Plaintiff.  Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of their injuries, or the tortious nature of Defendant's conduct causing their injuries, until less than the applicable limitations period prior to the filing of this action.

166.    Furthermore, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent conduct.  Through their affirmative misrepresentations and omissions, Defendant actively concealed from Plaintiff the risks associated with the defects in the Dual-ended Combat Arms™ earplugs.

167.    As a result of Defendant's actions, Plaintiff was unaware, and could not have reasonably known or have learned through reasonable diligence that the Plaintiff had been exposed to the defects and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendant's acts and omissions.

168.    Through Defendant's affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms™ earplugs, Plaintiff was prevented from discovering this information sooner because Defendant

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

herein misrepresented and continued to misrepresent the defective and dangerous nature of the Dual-ended Combat Arms™ earplugs.

169.    Additionally, pursuant to the Servicemember's Civil Relief Act, any period of Plaintiff's military service may be included in computing any statute of limitations applicable herein. *See* 50 U.S.C. § 3936.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests from Defendant 3M, compensatory damages together with appropriate equitable relief, costs and attorneys' fees as follows:

i. Award of monetary damages, including compensatory relief, to which Plaintiff is entitled at the time of trial;

ii. Award of pre- and post-judgment interest;

iii. Award of punitive damages;

iv. Award of costs; and,

v. Award of all such further relief as may be available at law or equity and may be proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

DATED: April 30, 2019.

COLSON HICKS EIDSON, P.A.

255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone:  (305) 476.7400
Facsimile:  (305) 476.7444

By: s/ Roberto Martinez
Roberto Martinez
Florida Bar No. 305596
bob@colson.com
Francisco R. Maderal
Florida Bar No. 41481
frank@colson.com

*Attorneys for Plaintiff*

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444